## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

**ARTURO VILLEGAS,**                §
    **Plaintiff,**                §
                      §
                      §          **EP-13-CV-14-DB**
**v.**                §
                      §
**ALBERTSONS, LLC and ANTONIO**                §
**LABRADO, Individually,**                §
    **Defendants.**                §

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendants Albertsons, LLC ("Albertsons")

and Antonio Labrado's ("Mr. Labrado") (collectively, "Defendants") "Motion for Summary

Judgment" ("Motion"), filed in the above-captioned cause on June 14, 2013.   Therein,

Defendants ask the Court to enter summary judgment against Plaintiff Arturo Villegas

("Plaintiff") on all of his claims.   On July 10, 2013, the Court entered a short order granting

Defendants' Motion.   The Court will now explain the reasons for its decision.

## BACKGROUND

This is an employment case involving claims under the Family and Medical

Leave Act ("FMLA") and the law of defamation.   Plaintiff worked in the bakery at Albertsons,

a national supermarket chain.   Before that, Plaintiff worked at the same store location for two of

Albertsons's predecessors there—"Smith's" and "Rainbow."   Pl. Dep. 10–11, 45; Labrado Dep.

5.   Mr. Labrado was Plaintiff's supervisor in the bakery the whole time—nearly thirty years.   Pl.

Dep. 10–11, 45.   The two men "were friends" who sometimes "would sit down and have

lunch."   Labrado Dep. 18.   Mr. Labrado considered Plaintiff a good employee who never had

any significant performance issues.   *Id.* at 10–13.

Plaintiff's daughter, who was approximately eleven years old when this litigation began, is disabled.   Pl. Dep. 43.   Because Plaintiff's wife is also disabled and cannot drive, Plaintiff is responsible for taking their daughter to medical appointments, which are scheduled, on average, for about every two weeks.   *Id.*

Plaintiff's normal shift in the Albertsons bakery was 4:00 A.M. to 12:30 P.M., so when Plaintiff needed to take his daughter to morning appointments, a scheduling conflict arose. Labrado Dep. 20–21.   When this happened, Plaintiff asked Mr. Labrado for time off.   Plaintiff explained in his affidavit: "My conversations with Mr. Labrado were easy due to our long standing [sic] work relationship.   He knew about my home life and the problems that I was having at home."   Pl. Aff. 2.   Mr. Labrado knew that Plaintiff's daughter had a mental disorder, a "bedwetting problem," "nightmares," and that she "might need surgery some time down the line." Labrado Dep. 17–18.   Plaintiff's need for time off to attend his daughter's medical appointments was "something that [Plaintiff] and Tony Labrado ha[d] dealt with for over ten years"—first at Smith's, then at Rainbow, and finally at Albertsons.   Pl. Dep. 10, 45.   Plaintiff testified in his deposition that "sometimes I would ask for the day off for my daughter's appointment, and [Mr. Labrado] would say that I couldn't take it because there was a lot of work."   *Id.* at 49.   Mr. Labrado "never refused" to give Plaintiff time off but "would always tell [him] to get in earlier" so that he could finish his shift in time for the appointment.   *Id.*; Labrado Dep. 36–37. Typically, this meant adjusting Plaintiff's schedule so that he worked from midnight to about 8:30 A.M.   Labrado Dep. 14–16.

When Albertsons acquired the supermarket from Rainbow, Plaintiff received a handbook of Albertsons policies on FMLA leave, which he did not read.   Pl. Dep. 39.   Plaintiff understood Albertsons's procedure for requesting FMLA leave to consist of "just ask[ing] Tony

[Labrado]." *Id.*  Mr. Labrado apparently did not disagree.   When Mr. Labrado was asked at his deposition if Plaintiff needed to fill out "a particular form or something" to request leave "because of . . . health concerns" involving "him or his family," Mr. Labrado testified, "that would just be me, basically"—the employee would "[j]ust talk[] to [me]."   Labrado Dep. 14–15, 20–21.   Mr. Labrado never referred Plaintiff to the Albertsons handbook or informed him of Albertsons's procedures or his rights under the FMLA—Mr. Labrado just tried to "always accommodate [Plaintiff] in any way that [he] could."   *Id.* at 14.

Plaintiff believed that Mr. Labrado was "trying to help [him and his family] out" by adjusting his work schedule because it allowed Plaintiff to both attend his daughter's appointments and earn his normal paycheck.   Pl. Dep. 49.   Plaintiff attended all his daughter's appointments—he never missed one.   *Id.* at 51.   There is no evidence that Plaintiff ever objected to Mr. Labrado adjusting his work schedule or that Plaintiff would have preferred to take FMLA leave.

On Easter Day in 2011, Mr. Labrado gave Plaintiff permission to take home some empty plastic containers for personal use.   *Id.* at 53–55.   Plaintiff put the containers on a grocery cart to transport them to his vehicle in the parking lot.   *Id.* at 55–57.   Walking alongside his coworker Oswaldo Arias, who also worked in the bakery, Plaintiff pushed the cart toward the front exit.   *Id.* at 58–59, 63.   When Plaintiff and Mr. Arias reached the front of the store, Rosemary Santana, a supervisor, inspected the cart and asked about the contents of a cardboard box on the bottom of the cart.   *Id.* at 63–66.   Plaintiff responded that he did not know what was inside the cardboard box and that in fact he had not noticed it when he loaded the plastic containers onto the cart.   *Id.* at 57, 64.   At Ms. Santana's request, Mr. Arias opened the

cardboard box, which turned out to contain more than ten pounds of meat.   *Id.* at 64, 66; Quintana Decl. ¶ 7.

An investigation ensued in which Albertsons interviewed Plaintiff and reviewed store security footage.   Ultimately, Plaintiff "was found not to be credible" in denying knowledge of the cardboard box because the "carts have honeycombed-shaped holes" that would have allowed Plaintiff to "see down to the lower rack," and because the meat weighed enough to affect the cart's handling and thereby alert Plaintiff to its presence.   Quintana Decl. ¶ 9. Further, store security footage did not support Plaintiff's account of where he got the cart.   *Id.* Plaintiff explains in his affidavit: "I was subsequently terminated because Albertsons believed I was dishonest and tried to steal the package of meat from the bottom of the cart."   Pl. Aff. 3. Mr. Labrado played no role in the decision to terminate Plaintiff's employment; none of the decisionmakers knew of Plaintiff's requests for leave.   Labrado Dep. 25; Quintana Decl. ¶¶ 10–12.

Despite Plaintiff's allegations in his Amended Complaint—the live complaint in this case—that Mr. Labrado accused him of stealing and called him a thief, Plaintiff recanted in his deposition, clarifying that Mr. Labrado in fact did no such thing.   Pl. Am. Compl. ¶¶ 17 & 31; Pl. Dep. 84–85.   Plaintiff testified that Mr. Labrado was "nice" to him when they talked after the meat incident and that Mr. Labrado never accused him of stealing.   Pl. Dep. 84–85.

A few days after Plaintiff was terminated, Mr. Arias was terminated "for taking stuff and cooking back in the bakery, like hamburgers and that kind of thing."   Labrado Dep. 28–29.   Sometime later, Albertsons also terminated Yolanda Saldivar, an employee in the meat department, for an unspecified theft.   *Id.* at 36.   There is no suggestion that Mr. Arias or Ms. Saldivar had ever requested FMLA leave.

4

On October 11, 2011, Plaintiff filed this lawsuit in state court.   On January 14, 2013, Defendants filed a timely Notice of Removal.[1]   Plaintiff's Amended Complaint states claims for FMLA interference, FMLA retaliation, and the tort of defamation.   On June 14, 2013, Defendants moved for summary judgment on all of Plaintiff's claims.   On June 28, 2013, Plaintiff responded, and on July 8, 2013, Defendants replied.   On July 10, 2013, the Court entered a short order granting Defendants' Motion.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."   Fed. R. Civ. P. 56(c)(1).   "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."   *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).   Where, as here, the burden of proof lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."   *Celotex*, 477 U.S. at 325.   While the moving party "must demonstrate the absence of a

---

[1] The action first became removable on December 27, 2012, when Plaintiff filed his Amended Complaint, omitting a state-law workers compensation claim that until then had made the action unremovable.

genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255).

## ANALYSIS

### 1. FMLA Claims

Plaintiff asserts FMLA claims for interference and retaliation. Defendants argue in their Motion that both claims fail as a matter of law, entitling Defendants to summary judgment. The Court will examine Plaintiff's interference and retaliation claims in turn.

### a. Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]."   29 U.S.C. § 2615(a)(1).   Interference claims "do not require a showing of discriminatory intent"—the plaintiff must prove only an act of interference.   *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350 (5th Cir. 2013) (Elrod, J., concurring); *accord Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) ("If an employer interferes with the FMLA-created right to medical leave . . . [this] is a violation regardless of the employer's intent.").   The employee also must prove that the violation caused him prejudice.   *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007) ("[The] FMLA's remedial scheme . . . requires an employee to prove prejudice as a result of an employer's noncompliance."); *Mercer v. Arbor E&T, LLC*, No. 11-cv-3600, 2013 WL 164107, at *16 (S.D. Tex. Jan. 15, 2013) ("Assuming that these allegations are sufficient to create a factual issue as to whether [the defendant] interfered with [the plaintiff's] FMLA rights, [the plaintiff] must additionally show a real impairment of her rights, and resulting prejudice, to prevail on her FMLA Interference claim.").   Although the Parties did not substantially brief the issue of prejudice, it is nonetheless central to the resolution of Plaintiff's interference claim.[2]

To trigger the FMLA's protections, an employee must notify his employer of his need for leave.   *See generally* 29 C.F.R. § 825.302 (setting out notice requirements).   "[T]he FMLA's relaxed notice requirements" create a "low threshold" for the employee conduct sufficient to give notice.   *Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 583 (5th Cir. 2010).

---

[2] Defendants argue simply that "Plaintiff cannot establish that he suffered any injury stemming from the alleged interference with his FMLA rights."   Def. Mot. Summ. J. 6.   Plaintiff does not address the issue of prejudice at all.

To give notice, "[a]n employee need not expressly assert rights under the FMLA or even mention the FMLA."[3]   *Id.*   Further, the burden is on the employer to seek to resolve questions about the employee's request: "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken."   29 C.F.R. § 825.302(c).

But the employee is not without obligations respecting notice.   Significantly, an employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.   29 C.F.R. §§ 825.302(d) & 825.303(c).   For example, the employer may require the employee to provide "written notice [setting] forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave," or "to contact a specific individual" in making the request.   29 C.F.R. § 825.302(d).   If an employee "does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied."[4]   29 C.F.R. §§ 825.302(d) & 825.303(c).

Upon ascertaining that an employee's request for leave might implicate the FMLA, the employer must notify the employee of his eligibility for FMLA leave.   29 C.F.R. § 825.300(b)(1).   Failure to do so may constitute interference with the employee's rights under

---

[3] The Department of Labor's regulations impose different notice requirements on an employee depending on whether he is requesting FMLA leave for the first time or is requesting leave for an FMLA-qualifying reason for which the employer has previously granted FMLA leave.   When an employee requests FMLA leave for the first time for a given FMLA-qualifying reason, the employee need not specifically reference the FMLA.   29 C.F.R. § 825.302(c).   But when an employee requests FMLA leave for a reason *for which the employer has previously provided FMLA leave,* the employee "must specifically reference the qualifying reason for leave or the need for FMLA leave."   *Id.*   Because Albertsons never provided Plaintiff with FMLA leave, each of his requests for time off to take his daughter to medical appointments was a first request and, therefore, subject to the relaxed notice standard.

[4] Formerly, the language of § 825.302(d) stipulated the opposite.   That is, it forbade employers from disallowing or delaying an employee's taking FMLA leave if the employee failed to comply with the employer's FMLA procedures but gave timely verbal or other notice.   *See Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 721 (6th Cir. 2003) (quoting then-current regulatory language).   The current language became effective January 16, 2009; it appears in both 29 C.F.R. §§ 825.302(d) & 825.303(c), which govern employee notice requirements for foreseeable and unforeseeable leave, respectively.

the FMLA.  *See Downey*, 510 F.3d at 540 (citing *Ragsdale*, 535 U.S. at 89–90, for the rule that "a failure to advise of FMLA rights could constitute an interference").

Plaintiff claims that Albertsons interfered with his rights under the FMLA when, rather than give him FMLA leave, Mr. Labrado adjusted Plaintiff's work schedule to accommodate his daughter's medical appointments and did not apprise Plaintiff of his rights under the FMLA.  Albertsons counters that it lacked notice of Plaintiff's request for FMLA leave—and, in any case, that it was entitled to deny Plaintiff's request because Plaintiff failed to comply with Albertsons's established procedures for requesting FMLA leave.   Further, Albertsons argues that its actions did not constitute interference because Plaintiff suffered no injury.   The Court will consider these arguments in turn.

### i.  Albertsons's Failure to Advise Plaintiff of His FMLA Rights

When Plaintiff asked Mr. Labrado for leave to take his daughter to a medical appointment—an FMLA-qualifying reason—Albertsons assumed a duty to advise Plaintiff of his eligibility for FMLA leave.   *See* 29 C.F.R. § 825.300(b)(1) ("[W]hen the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave . . . .").   Even if Mr. Labrado was unsure whether Plaintiff's request for time off amounted to a request for FMLA leave, Albertsons's duty to advise remained in effect because "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c).   In other words, the burden was on Albertsons, not on Plaintiff, to clarify the nature of Plaintiff's request for leave.   Albertsons points to no evidence rebutting Plaintiff's contention that Albertsons failed to advise him of his eligibility for FMLA leave when

he requested leave for his daughter's appointments.    Because "a failure to advise of FMLA rights could constitute an interference," a genuine issue of material fact exists as to whether Albertsons's failure to advise Plaintiff of his FMLA rights interfered with his attempt to exercise them.   *Downey*, 510 F.3d at 540.

### ii.   Albertsons's Adjustment of Plaintiff's Work Schedule

Interference also includes "discouraging an employee from using such leave" or engaging in "manipulation . . . to avoid responsibilities under the FMLA."   29 C.F.R. § 825.220(b).   At his deposition, Plaintiff testified that "sometimes I would ask for the day off for my daughter's appointment, and [Mr. Labrado] would say that I couldn't take it because there was a lot of work."   Pl. Dep. 49.   Plaintiff testified that Mr. Labrado "never refused" to give him time off but "would always tell [him] to get in earlier" so that he could finish his shift in time for his daughter's medical appointment.   *Id.*   By emphasizing how much work needed to be done and encouraging Plaintiff to come in early so that he could do it, Mr. Labrado discouraged Plaintiff from taking FMLA leave.   Thus, there is a genuine issue of material fact on interference.   *See, e.g.*, *Nixon v. Silverado Hospice of Houston*, No. H-12-985, 2013 WL 3973980, *4–5 (S.D. Tex. July 31, 2013) (finding fact question on interference where human resources employee called plaintiff during her leave and "pressured her to return to work"); *Butler v. IntraCare Hosp. N.*, No. H-05-2854, 2006 WL 2868942, at *4 (S.D. Tex. Oct. 4, 2006) (holding that employer's suggestion that employee work from home rather than take FMLA leave could constitute discouragement); *Mercer*, 2013 WL 164107 at *15–16 (assuming for sake of argument that requiring employee to complete recently assigned project before leave commenced and giving her tasks to complete at home during leave constituted discouragement); *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 454 (6th Cir. 2005) (finding

fact issue on discouragement where employer failed to respond to employee's inquiries or inform her of eligibility regarding leave).

### iii. Plaintiff's Failure to Comply with Albertsons's Procedures for Requesting FMLA Leave

Albertsons argues that regardless of whether its actions might ordinarily amount to interference, they do not in this case because Plaintiff failed to comply with Albertsons's procedures for requesting FMLA leave.   Hence, Albertsons argues, it was entitled to deny Plaintiff's requests for leave.   As explained below, this argument is unpersuasive under the circumstances.

In general, the Fifth Circuit frowns upon strict enforcement of an employer's FMLA procedures where the employee gives adequate notice of his need for FMLA leave and does not affirmatively refuse to comply with the employer's procedures.   *Compare Saenz*, 613 F.3d at 580–82 (holding that "district court erred in strictly enforcing [employer's] FMLA procedures" where employer "had an abundance of information" about employee's need for leave and employee had not "affirmatively refused to comply with her employer's procedure"), *with Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842–44 (5th Cir. 2007) (affirming district court's enforcement of employer's policy because plaintiff affirmatively refused to comply with it and offered no persuasive reason to justify setting it aside).   Further, the adequacy of an employee's notice regarding the need for FMLA leave is normally a jury question.   *See Hopson v. Quitman Cnty. Hosp. and Nursing Home, Inc.*, 126 F.3d 635, 640 (5th Cir. 1997) (holding that "the adequacy of [the plaintiff's] notice is a fact issue"); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 304 (3d Cir. 2012) ("Under the circumstances of this case, we believe that the adequacy of [the plaintiff's] notice is a question of fact."); *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 903 (8th Cir. 2010) ("Our cases instruct that the

11

adequacy of an employee's notice requires consideration of the totality of the circumstances . . .
and is typically a jury question." (internal citation omitted)).

The Department of Labor's regulations permit an employer to "require an
employee to comply with the employer's usual and customary notice and procedural requirements
for requesting leave, absent unusual circumstances."   29 C.F.R. §§ 825.302(d) & 825.303(c).   If
an employee "does not comply with the employer's usual notice and procedural requirements, and
no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or
denied."   29 C.F.R. §§ 825.302(d) & 825.303(c).   What circumstances qualify as "unusual" is
not well defined in the regulations or in case law, and the Fifth Circuit has not weighed in.

The regulations explain that "[u]nusual circumstances would include situations
such as when an employee is unable to comply with the employer's policy that requests for leave
be made by contacting a specific number because on the day the employee needs to provide notice
of his or her need for leave there is no one to answer the call-in number and the voice mail box is
full."   29 C.F.R. § 825.302(d).   The regulations offer no further guidance.

To be sure, courts have applied the unusual-circumstances exception where, as in
the regulations' example, circumstances physically prevent the employee from using the
prescribed channels of communication.   *See, e.g., Flores v. Murphy Co.*, No. 1:12-cv-2156-CL,
2014 WL 584553, at *6 (D. Or. Feb. 12, 2014) (finding sufficient evidence of unusual
circumstance where employee could not comply with employer's call-in procedure because he
was incarcerated and lacked phone access).   Courts also have applied the exception where some
ambiguity—either intrinsic to the procedures themselves or arising from the employer's conduct
respecting them—waives or otherwise justifies the employee's noncompliance.   *See, e.g., Fuller
v. AT&T*, No. 12-1001, 2014 WL 66019, at *7 (W.D. Pa. Jan. 8, 2014) (applying

unusual-circumstances exception where "conflicting instructions" about procedures raised "genuine issue of fact as to whether this ambiguity would excuse" noncompliance); *Woida v. Genesys Reg'l Med. Ctr.*, 4 F. Supp. 3d 880, 896 (E.D. Mich. 2014) (opining that employer's acceptance of noncompliant requests for FMLA leave pursuant to company–union agreement "might fall with[in] the . . . 'unusual circumstances' exception"); *Uselton v. CSX Transp., Inc.*, No. 3:13-cv-349, 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014) (finding that reasonable juror could apply unusual-circumstances exception where employer's procedure conflicted with special instructions from its employee-assistance program and thus "effectively mitigated [plaintiff]'s failure to provide [his employer] with notice").

Other courts, without invoking the unusual-circumstances exception specifically, have nonetheless excused the employee for failing to comply with the employer's procedures where a fact issue existed about whether the employee gave adequate notice of the need for leave. *See, e.g.*, *Saenz*, 613 F.3d at 580–82 (holding that "district court erred in strictly enforcing [employer's] FMLA procedures" where employer "had an abundance of information" about employee's need for FMLA leave and employee had not "affirmatively refused to comply with her employer's procedure"); *Butler*, 2006 WL 2868942, at *4 (crediting plaintiff's argument that "any written [notice] requirement was waived by her supervisors with whom she kept in nearly daily contact about her situation because they never requested any formal written request for leave"); *Holloway v. D.C. Gov't*, 9 F. Supp. 3d 1, 8 (D.D.C. 2013) (finding fact issue on adequacy of notice where plaintiff "did not follow the [employer's] normal procedures for requesting FMLA leave" but "notified [his supervisor] that he was going . . . into . . . [the] Salvation Army, and [requested] leave . . . to . . . get drug treatment" (internal quotation marks omitted)); *Ruark v. Ark. Democrat-Gazette, Inc.*, No. 4:13-cv-283, 2014 WL 1809606, at *6 (E.D. Ark. May 2, 2014)

(holding that "a reasonable jury could determine that [the plaintiff] provided enough information

to put [his employer] on notice that he may have been in need of FMLA leave" even though "[the

plaintiff] did not comply with [his employer's] policies requesting leave"); *cf. Cundiff v. Lenawee

Stamping Corp.*, No. 14-1596, 2015 WL 73524, at *2 (6th Cir. Jan. 7, 2015) (implying that

"unwritten policy" on requesting FMLA leave might excuse employee's noncompliance with

official policy but finding "no evidence" of such).

   The Court finds that a genuine issue of material fact exists as to whether unusual

circumstances justified Plaintiff's failure to comply with Albertsons's usual and customary notice

and procedural requirements for requesting FMLA leave.   Mr. Labrado was Plaintiff's supervisor

in the supermarket bakery for nearly thirty years; their relationship survived two changes in the

store's ownership.   Pl. Dep. 10–11, 45.   Their relationship was a constant in a workplace marked

by change.   As Plaintiff explained in his affidavit: "My conversations with Mr. Labrado were

easy due to our long standing [sic] work relationship.   He knew about my home life and the

problems that I was having at home."   Pl. Aff. 2.   Mr. Labrado testified in his deposition that he

knew Plaintiff's daughter had a mental disorder, a "bedwetting problem," "nightmares," and that

she "might need surgery some time down the line."   Labrado Dep. 17–18.   Plaintiff's need for

time off to take his daughter to medical appointments was "something that [Plaintiff] and Tony

Labrado ha[d] dealt with for over ten years"—first at Smith's, then at Rainbow, and finally at

Albertsons.   Pl. Dep. 10, 45.   When Albertsons acquired the supermarket from Rainbow,

Plaintiff received a handbook of Albertsons policies on FMLA leave, which he did not read.   *Id.* at

39.   In his deposition, Plaintiff testified:

   Q.   What do you understand to be the procedure to make a request for FMLA leave
   at Albertson's [sic]?

> A.   Just related to my daughter being sick, and I just asked Tony [Labrado]. That's what I did.

*Id.*   Significantly, this is consistent with Mr. Labrado's testimony about his own understanding of Albertsons's procedure for requesting FMLA leave:

> Q.   If an employee like Mr. Villegas wanted to modify his schedule because of either health concerns of—for him or for his family, would there be a particular form or something that he would have to fill out, or would they just talk to you?
>
> A.   As far as the—like the weekly schedule, that would just be me, basically.
>
> Q.   Okay.   Just talking to you?
>
> A.   Yes.

Labrado Dep. 14–15.   Notwithstanding Albertsons's procedures, Plaintiff continued to request time off for his daughter's appointments just as he always had—by directing his request to Mr. Labrado.   And Mr. Labrado did not object.   In fact, Mr. Labrado's deposition testimony, excerpted above, suggests strongly that he did not even know Albertsons's FMLA procedures himself.   *Id.*   He simply tried to "always accommodate [Plaintiff] in any way that [he] could."   *Id.* at 14.

On these facts, Albertsons cannot raise Plaintiff's noncompliance with its FMLA procedures as a defense to Plaintiff's interference claim—at least, not at the summary judgment stage.   A genuine fact issue exists as to whether Albertsons waived its right to insist on Plaintiff's compliance with its FMLA procedures when Plaintiff's supervisor, Mr. Labrado, failed to follow or enforce them.   Accordingly, a reasonable juror could find that Mr. Labrado's failure to follow or enforce Albertsons's FMLA procedures is an unusual circumstance that justified Plaintiff's noncompliance.   The Court will now turn to the issue of prejudice.

### iv. Prejudice

To prevail on an interference claim, an employee must prove that the violation caused him prejudice. *Ragsdale*, 535 U.S. at 89; *Cuellar*, 731 F.3d at 347; *Downey*, 510 F.3d at 540; *Mercer*, 2013 WL 164107, at *16. Prejudice is a "real impairment" of an employee's FMLA rights. *Downey*, 510 F.3d at 540 (quoting *Ragsdale*, 535 U.S. at 90).

At his deposition, Plaintiff explained that Mr. Labrado, by adjusting Plaintiff's schedule to accommodate his daughter's medical appointments, "was trying to help us out." Pl. Dep. 49. Adjusting Plaintiff's schedule allowed Plaintiff to attend his daughter's medical appointments and, critically, to also earn his normal paycheck—a benefit not conferred by FMLA leave. *Id.* Plaintiff attended all of his daughter's appointments—he never missed one. *Id.* at 51. Further, Plaintiff has offered no evidence that he ever objected to the adjustment of his work schedule or would have preferred to take unpaid FMLA leave.[5] Accordingly, the Court holds that Plaintiff suffered no prejudice as a result of the adjustments to his schedule and, therefore, that summary judgment in Defendants' favor is appropriate on his interference claim.

---

[5] Moreover, the law contemplates a dialogue between employees and their employers regarding the scheduling of medical treatment. The Department of Labor's regulations provide:

> When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations, subject to the approval of the health care provider. Employees are ordinarily expected to consult with their employers prior to the scheduling of treatment in order to work out a treatment schedule which best suits the needs of both the employer and the employee. For example, if an employee who provides notice of the need to take FMLA leave on an intermittent basis for planned medical treatment neglects to consult with the employer to make a reasonable effort to arrange the schedule of treatments so as not to unduly disrupt the employer's operations, the employer may initiate discussions with the employee and require the employee to attempt to make such arrangements, subject to the approval of the health care provider.

29 C.F.R. § 825.302(e). Accordingly, Albertsons was entitled to require Plaintiff to make a reasonable effort to schedule his daughter's treatment so as to not unduly disrupt its operations. There is no evidence that Plaintiff consulted Mr. Labrado or anyone else at Albertsons in scheduling his daughter's medical appointments. Because Albertsons was entitled to initiate discussions with Plaintiff on scheduling matters and to require him to attempt to schedule his daughter's appointments so as to not unduly disrupt its operations, Mr. Labrado's discussions with Plaintiff about the possibility of adjusting his work schedule to accommodate prescheduled appointments did not, alone, prejudice Plaintiff. Further, there is no evidence that Plaintiff felt prejudiced at the time or ever objected to the adjustment of his schedule.

### b. Retaliation

The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise their rights to leave.   The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the statute]."   29 U.S.C. § 2615; *see also Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009) ("The FMLA not only requires employers to permit employees to take leave under the statutory framework, it prohibits employers from retaliating against employees for doing so.").

Where, as here, the plaintiff proffers no direct evidence of retaliation, "[t]he Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).   Under this framework, the plaintiff must first establish a prima facie case.   *Id.*   If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action.   *Id.*   Once the defendant articulates such a reason, the plaintiff must show that the proffered reason is a pretext for retaliation.   *Id.*   Unlike interference claims, retaliation claims require the plaintiff to show discriminatory intent.   *Cuellar*, 731 F.3d at 349 (Elrod, J., concurring).

To establish a prima facie case, the plaintiff must show: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who did not request FMLA leave, or that the adverse action occurred because he requested FMLA leave.   *Hunt*, 277 F.3d at 768.   As discussed in the analysis of Plaintiff's interference claim above, Plaintiff was protected under the FMLA.   Further, Plaintiff suffered an adverse employment action when he was terminated.   *See Pegram v. Honeywell*,

*Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (stating that "an adverse employment action consists of *ultimate employment decisions* such as . . . discharging" (internal quotation marks omitted)). Thus, only the third element is in play.

### i. Prima Facie Case

Plaintiff's prima facie case turns on whether he can show that he was treated less favorably than an employee who did not request FMLA leave, or that he was terminated because he requested FMLA leave.   First, the question of whether Plaintiff can show that he was treated less favorably than an employee who did not request FMLA leave can be disposed of quickly. Plaintiff does not name a comparator or even allege disparate treatment, and there is no evidence that Albertsons treated Plaintiff less favorably than an employee who did not request FMLA leave.[6]   Second, there is no evidence that Albertsons terminated Plaintiff because he requested FMLA leave.   The timing of Plaintiff's termination is not at all suspicious: for a decade before his termination, Plaintiff requested leave for his daughter's medical appointments without consequence.   Moreover, Plaintiff's termination came hard on the heels of his alleged attempt to take meat he did not pay for.   Finally, none of the people involved in the termination decision even knew of Plaintiff's requests for leave.   Labrado Dep. 25; Quintana Decl. ¶ 12.   For these reasons, Plaintiff cannot make out a prima facie case.

### ii. Pretext

Because Plaintiff cannot make out a prima facie case, the Court need not address whether Albertsons's proffered reason for terminating Plaintiff—his alleged attempt to take meat from the store—is pretextual.   Nonetheless, the Court will briefly do so.

---

[6] The only evidence that speaks to this issue tends to show that Albertsons treated Plaintiff like other employees suspected of theft.   Albertsons also terminated Mr. Arias and Ms. Saldivar for theft, neither of whom (as far as the record shows) made any requests for FMLA leave.   Labrado Dep. 28–32.

Plaintiff argues that Albertsons cannot prove that he tried to steal the meat.   But Plaintiff's actual guilt or innocence is irrelevant.   The relevant question is whether Albertsons terminated Plaintiff's employment because it believed in good faith that he tried to steal the meat.   *Cf. Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993) (explaining in age-discrimination case that "the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief").   The uncontradicted evidence shows that it did.   Significantly, Plaintiff even testified in his deposition that he does not think Albertsons terminated his employment in retaliation for his requests for leave—testimony that all but abrogates his retaliation claim. Plaintiff testified:

> Q.   Do you believe that you were discharged because you asked for some time off to go to your doctor—your daughter's medical appointments?
>
> A.   No.

Pl. Dep. 88.   This testimony is not anomalous.   Rather, it is consistent with the testimony in Plaintiff's affidavit, which describes the meat incident and then concludes: "I was subsequently terminated because Albertsons believed I was dishonest and tried to steal the package of meat from the bottom of the cart."   Pl. Aff. 3.   For these reasons, Plaintiff cannot prove pretext.

Thus, Plaintiff's retaliation claim fails at two junctures.   First, Plaintiff cannot make out a prima facie case.   Second, even if Plaintiff could make out a prima facie case, he still could not prove pretext.   Therefore, summary judgment in Defendants' favor on Plaintiff's retaliation claim is appropriate.

## 2.   Defamation

Plaintiff alleges in his Amended Complaint that Mr. Labrado "accused him of being a thief" "in front of other personnel in the office the day after the [meat] incident" and said

that "he had heard from other employees . . . that [Plaintiff] was a thief."   Pl. Am. Compl. ¶¶ 17

& 31.   Plaintiff states that Mr. Labrado "perpetuated the 'rumors' regarding [Plaintiff] stealing

things" and did "nothing to quash or clarify the issue."   *Id.*   Plaintiff also alleges that an

employee who interviewed him about the meat incident by phone called him "a liar and a thief."

*Id.* at ¶ 18.   For the following reasons, Plaintiff's defamation claim fails.

　　　　To succeed on a claim for defamation, the plaintiff must prove that the defendant

published a false, defamatory statement about him to a third party.   *Hurlbut v. Gulf Atlantic Life*

*Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *see also Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d

1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco

2005, no pet.).   Texas recognizes a qualified privilege for accusations about an employee made

by an employer to a person with an interest in the matter.   *Duffy v. Leading Edge Prods, Inc.*, 44

F.3d 308, 312 (5th Cir. 1995); *Pioneer Concrete of Tex., Inc. v. Allen*, 856 S.W.2d 47, 49 (Tex.

App.—Houston [14th Dist.] 1993, writ denied).   "The interest giving rise to the privilege may

be that of the publisher of the statement, the recipient, or a third party."   *Duffy*, 44 F.3d at 312

(citing *Pioneer*, 856 S.W.2d at 50).

　　　　Despite the allegations in Plaintiff's Amended Complaint, Plaintiff testified in his

deposition that Mr. Labrado never called him a thief at all.   When asked whether "Tony

Labrado ever accuse[d] [him] of stealing" or "ever call[ed] [him] a thief," Plaintiff responded

simply "No."   Pl. Dep. 84–85.   Moreover, there is no evidence that Mr. Labrado perpetuated

rumors that Plaintiff was a thief by failing "to quash or clarify the issue" of the meat incident.

Pl. Am. Compl. ¶ 31.   The only evidence even marginally relevant to this allegation cuts against

it: Plaintiff testified that Mr. Labrado was "nice" to him in their conversation after the meat

incident.   Pl. Dep. 84.   Further, even if Mr. Labrado did fail to quash or clarify the issue of

Plaintiff's involvement in the meat incident, this still would not create liability.    No law imposes on listeners a duty to vindicate the reputation of a person defamed in their presence.

Finally, any statements by Mr. Labrado and employees investigating the meat incident were qualifiedly privileged because of Albertsons's interest in ascertaining whether Plaintiff was attempting to steal the meat.    As a matter of Texas law, statements by employers made without malice and pursuant to an investigation of employee conduct are not defamatory. *Duffy*, 44 F.3d at 312; *Pioneer*, 856 S.W.2d at 49.

Thus, Plaintiff's defamation claim fails for two independent reasons.    First, the evidence shows that Mr. Labrado did not call Plaintiff a thief or accuse him of stealing. Second, even if Mr. Labrado had made such statements, they would be qualifiedly privileged because of Albertsons's interest in investigating the meat incident.    Therefore, summary judgment in favor of Defendants on Plaintiff's defamation claim is appropriate.

## CONCLUSION

Plaintiff's FMLA interference claim fails because he suffered no prejudice.    His retaliation claim fails because he cannot make out a prima facie case and, even if he could, he still could not prove pretext.    His defamation claim fails because no defamatory statement was made and, in any case, a qualified privilege applied.    Therefore, summary judgment in Defendants' favor on all of Plaintiff's claims is appropriate.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Albertsons, LLC and Antonio Labrado's "Motion for Summary Judgment" is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff Arturo Villegas's claims against Defendants Albertsons, LLC and Antonio Labrado are **DISMISSED WITH PREJUDICE**.

**SIGNED** this **11th** day of **March 2015**.

_____
DAVID BRIONES
**SENIOR UNITED STATES DISTRICT JUDGE**